## DUNCAN *v.* CLARK.

Although the special lien of a landlord for rent on crops made upon land rented from him dates from the maturity of the crops, and is superior in dignity to the lien of an older common law judgment against the tenant, yet, where the rent is payable in money and the tenant delivers the whole or a portion of the crops to the landlord in payment or satisfaction of the rent debt, the landlord takes the same subject to the lien of the older judment, and cannot resist the enforcement thereof by claiming the property, but must assert the priority of his lien for the rent by foreclosing the same and claiming the proceeds of the sale.

May 15, 1895. Brought forward from the last term.

: *Certiorari.* Before Judge MILNER. Catoosa superior court. February term, 1894.

W. E. MANN, for plaintiff. J. H. ANDERSON, *contra.*

LUMPKIN, Justice.

The rent due by McGhee to his landlord, Clark, for the tract of land for the year 1891, was payable in money. The tenant delivered to the landlord, in payment of the rent, corn raised upon the land that year. Duncan had the corn, while in Clark's possession, levied upon under an execution issued from a common law judgment rendered in 1883. Clark filed a claim, and the question was, whether the property was, or was not, subject.

Section 2289 of the code declares that: "When the rent agreed to be paid is a part of the crop, such portion shall not be liable to be levied on by any process for debt against the tenant: provided, the contract is in writing and the rent does not exceed one half of the crop."

In *Toler et al.* v. *Seabrook, adm'r,* 39 *Ga.* 14, this court, in construing section 2263 of Irwin's code (it being the same as the above quoted section of the present code), held that this section applied only when the rent was for a fractional part or share of the crop, and not where it was a fixed amount. The rent stipulated in that case was thirty-five bags of cotton and five hundred bushels of corn.

In *Stallings* v. *Harrold, Johnson & Co.,* 60 *Ga.* 478, it appeared that this firm had, under the law then in force, a lien upon the crops of one Jowers for supplies furnished him to make the same, and that he delivered to them certain cotton in part payment or satisfaction of this lien. After such delivery, the cotton was levied upon under an older judgment against Jowers in favor of Stallings, and Harrold, Johnson & Co. interposed a claim to the cotton. Upon this state of facts, this court distinctly held that, though the crop lien was of superior

dignity to that of the judgment, its priority could not be asserted by a mere claim at law, but by foreclosure and claiming the proceeds of the sale. In other words, it was held that the lien of Harrold, Johnson & Co. was not title, and that the title which they had acquired in consequence of the delivery of the cotton to them by Jowers was not good as against the older judgment, and that the special crop lien was one which had to be asserted by sale under legal process, and not by mere detention or retention of the property in pursuance of delivery by the debtor. This case, in principle, rules the case at bar.

The controlling difference between the case in 60th *Georgia* just mentioned, and that of *Durdin* v. *Hill*, 75 *Ga.* 228, is that in the latter the rent stipulated for was a part of the crop in kind; and accordingly, it was held that after the tenant had actually delivered to the landlord, in settlement of the debt for rent, a part of the crop, which was afterwards levied upon by a general judgment creditor of the tenant, the landlord could properly file a claim to the property. While no section of the code was cited in the opinion, the decision was in perfect harmony with the section above quoted.

The act of December 22d, 1884 (Acts of 1884–5, p. 91), which controls the present case, is really the same, in substance, as section 2289 of the code, with the proviso omitted. The case of *Almand* v. *Scott & Co.*, 80 *Ga.* 95, decided since the passage of this act, is also somewhat in point. It was there held that where a landlord, having a lien upon his tenant's crop for supplies furnished, wished to protect himself from a levy under an older judgment, he could not do so by mere claim, but must foreclose his lien and have the property sold under it.

The case of *Wiggins* v. *Tumlin*, decided April 1st, 1895, is distinguishable from the case at bar. Indeed, that case was decided upon its own peculiar facts. There

it appeared that the mortgage was to secure the payment of a promissory note given for the purchase money of the identical property described in the mortgage. When the note matured, nothing whatever had been paid upon it, and the purchaser, being unable to pay it in cash, simply returned to the seller the property itself in satisfaction of the debt. It appeared beyond question that this was done in absolute good faith and without fraud of any kind, and that the property was not worth more than the amount of the note. While it is true that the mortgage did not vest any title in the mortgagee, he had, both in law and in justice, the highest and best lien upon the property; and, as between himself and the debtor, there was certainly no good reason why the latter should not be permitted to surrender in satisfaction of the note and mortgage the very property for which they were given. In a case of this kind, the opportunity to perpetrate a fraud upon other persons was very slight indeed, if it existed at all; for every one well knows that personal property, after being used, is rarely worth as much as it was before. Again, the mortgagee had shown diligence by contracting for a lien upon the property sold, the purpose of which was to secure beyond peradventure the payment of the purchase money. In short, it was simply a case where one bought from another property for which he was unable to pay, and subsequently returned it to the seller in settlement of the debt, who at that time had a higher and better right than any other person to make his money out of this very property, and the circumstances were such that no other creditor could possibly be injured by permitting this to be done. See *Rasin* v. *Swann, Stewart & Co.*, 79 *Ga.* 703. In the case at bar, the lien of the landlord for his rent arose by operation of law, and not by virtue of a contract he had himself made. It covered the entire crop of the tenant, and it is obvious that in such a case the landlord

and tenant, by collusion between themselves, could easily defraud judgment creditors of the latter, if he were allowed, by merely delivering the crops, or a portion thereof, to the landlord, to vest in him a title which would be superior to the lien of existing judgments against the tenant. The tenant, by delivering to the landlord more than enough of the crops to satisfy the landlord's lien, could, with the latter's connivance, cover up property really subject to judgments held by other creditors. Hence, in such cases, as was suggested in *Stallings* v. *Harrold, Johnson & Co., supra,* the necessity that the property be legally administered and the proceeds paid out according to due priority, thus giving to all persons interested the assurance of obtaining their exact rights. No such necessity exists where a specific article of personalty is given up in satisfaction of the identical mortgage debt contracted in purchasing it. Again, section 2289 of the code, which, as we have seen, was not, relatively to the question in hand, affected by the act of 1884, seems to imply that unless the rent agreed to be paid is a part of the crop, the landlord cannot take it from the tenant free from liability to be levied on under process against the latter.

The decision of this court in the case of *Stewart* v. *Berry et al.,* 84 *Ga.* 177, was based expressly upon section 3586 of the code, which distinctly declares that when a person holds property under a bond for titles, and the purchase money has been partially paid, the same may be levied upon under judgments against such person, and the entire interest stipulated in the bond shall be sold, etc.; and it is therefore manifest that the decision in the *Wiggins* case is not in conflict with that made in the case just mentioned.  *Judgment reversed.*